IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER M.,[1]                                    Case No. 6:22-cv-01378-SB

               Plaintiff,                        **OPINION AND ORDER**

       v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Christopher M. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have

consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the

reasons explained below, the Court reverses the Commissioner's decision because it is based on

harmful legal error and not supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* (citing *Garrison*, 759 F.3d at 1009). Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in 1980, making him thirty-six years old on December 23, 2016, his alleged disability onset date.[2] (Tr. 23, 34.) Plaintiff is college educated and has past work

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the

experience as a material handler, stock supervisor, and retail store manager. (*Id.* at 34, 354.) In his applications, Plaintiff alleged disability due to anxiety, panic disorder without agoraphobia, severe recurring major depression without psychotic features, and residual nerve damage from two previous microdiscectomies. (*Id.* at 103, 118.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration. (*Id.* at 171, 176, 185, 188.) On August 30, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 191.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at initial and supplemental hearings before an ALJ on March 11, 2020, and May 26, 2021. (*Id.* at 44-99.)

On July 29, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 20-43.) On July 19, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2021 (Tr. 23) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2021, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 1148-49. The Commissioner bears the burden of proof at step five, where the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). If the Commissioner fails to meet this burden, the claimant is disabled. *See Garrison*, 759 F.3d at 1011.

## III.     THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 25-36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 23, 2016, the alleged onset date. (*Id.* at 25.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: degenerative disc disease, status-post surgery, obesity, major depressive disorder, and generalized anxiety disorder. (*Id.* at 25-26.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 26.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) can frequently climb ramps and stairs but never ladders, ropes, or scaffolds; (2) can occasionally stoop and crawl and frequently kneel and crouch; (3) requires the ability to alternate between sitting and standing at will, while remaining on task; (4) can perform simple, routine tasks; (5) can tolerate occasional contact with co-workers, but cannot engage in team-based work; (6) can tolerate no direct contact with the public, but incidental public contact is not limited; and (7) cannot engage in strict production work, such as timed quotas or assembly line work. (*Id.* at 28.)

At step four, the ALJ found that Plaintiff could not perform his past work as a material handler, stock supervisor, or retail store manager. (*Id.* at 34.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, such as work as a small products assembler I or II, production assembler, or sub assembler. (*Id.* at 35.)

## DISCUSSION

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for discounting his symptom testimony, improperly disregarded his wife's lay witness testimony, and improperly discounted the medical opinion testimony of three of Plaintiff's mental health providers. (Pl.'s Opening Br. ("Pl.'s Br.") at 5-20, ECF No. 11.) As explained below, the Court agrees. The Court therefore reverses the Commissioner's decision because it is based on harmful legal error.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Legal Standard

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664,

678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (simplified). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B.    Analysis

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 29.) The ALJ was therefore required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to meet that standard here.

### 1.    Plaintiff's Testimony

Plaintiff testified at two hearings before the ALJ and also provided written testimony. (Tr. 50-59, 74-90, 378-85.) As relevant here, in written testimony, Plaintiff stated that he had become "unable to interact with others in any way that doesn't result in feelings of anxiety," and his "threshold for panic has significantly lowered[,]" although that is "less true around family and pre-established friends." (*Id.* at 378.) He had difficulty getting out of bed, woke up in the middle of the night "ruminating over fears and anxieties" or with nightmares, often wore the same clothes several days in a row, failed to shower or shave, and ate meals inconsistently. (*Id.* at 379-80.) His family reminded him to shower and helped him with medication management. (*Id.* at 380.) He was unable to handle finances because it caused him too much anxiety. (*Id.* at

382.) His attention span varied depending on his anxiety level. (*Id.* at 383.) Change without warning resulted in "guaranteed panic attacks." (*Id.* at 384.)

At the hearings, Plaintiff testified that, due to the stress of his last job, he became suicidal and checked into a behavioral health unit. (*Id.* at 79, 85.) He internalized criticism and feedback, took it personally, lost sleep over it, and could not think straight. (*Id.* at 85.) The pressure from supervision at his former job caused him to get stressed, make more mistakes, and want to escape. (*Id.*) In response to panic, he experienced "anxiety paralysis." (*Id.* at 89.) At the time of the hearing, he experienced panic attacks three to four times weekly for approximately twenty to thirty minutes each. (*Id.* at 83.) Occurrences such as the phone ringing or completing housework caused him stress and panic. (*Id.* at 83-84.) He remained at home, avoiding doing the shopping or going out unless absolutely necessary. (*Id.* at 83.) Anything outside of his normal routine made him anxious. (*Id.* at 55, 84.) His family reminded him to eat, take care of hygiene, take medications, and attend appointments. (*Id.* at 55.) Checking in on his sons when they participated in an online school program hosted by the school district caused him stress. (*Id.* at 75, 84.) He spent his days trying to keep the house clean, taking his dog on short walks, reading, and texting a few friends. (*Id.* at 89-90.) Because he could control the things that trigger his anxiety, he described his mental health symptoms as "stable." (*Id.* at 57.)

## 2.    The ALJ's Findings

In discounting Plaintiff's testimony, the ALJ observed that Plaintiff's "treatment compliance was not always consistent, as treatment notes indicate relatively frequent cancellations, and the claimant was noted to be off his medication for weeks at a time" but that "the record otherwise shows relatively good medication compliance with no side effects[.]" (*Id.* at 29, citing Tr. 591, 604, 1366, 1389, 1392, 1429, 1433, 1553.) The ALJ noted that "[p]articularly during periods of poor compliance, the claimant reported worsening anxiety,

PAGE 7 – OPINION AND ORDER

insomnia, and panic attacks[.]" (*Id.*, citing Tr. 1366.) The ALJ found that "[t]he record also shows treatment was effective, as the claimant reported significant improvement in his mental health symptoms, denied depressive symptoms and psychosis, and reported a decrease in his panic attacks[.]" (*Id.* at 29-30, citing Tr. 581, 595, 1263, 1477.) Plaintiff "noted improved coping skills, and stated he was getting good sleep" and that "he was happy with his current medication regimen and dosages, and would like to continue with no changes[.]" (*Id.* at 30, citing Tr. 585, 604, 616, 1047, 1263.) The ALJ noted that Plaintiff's symptoms were mild and stable (*id.*, citing Tr. 586, 590, 627) and that mental status examinations showed Plaintiff to be "alert and oriented, appropriately groomed and dressed, and pleasant and cooperative, with normal mood and affect, appropriate behavior, good eye contact, and fully understandable speech[.]" (*Id.*, citing Tr. 565, 571, 584, 591, 603, 629, 721, 767, 1170, 1200, 1275, 1311, 1368, 1436.) Further, records revealed "linear and goal-directed thought processes, normal attention and concentration, appropriate thought content, normal memory, good judgment and insight, and average cognitive functioning" and "no evidence of hallucinations or delusions" or "homicidal and suicidal ideation[.]" (*Id.*, citations omitted.)

The ALJ observed that Plaintiff "took an active role in supervising his sons' online homeschooling," walked his dog, prepared simple meals, handled personal hygiene, went to doctor's appointments, took medications, watched TV, read, used the internet, played games, and drove. (*Id.* at 27, 30, citing Tr. 378-85, 1049-50, 1123, 1165, 1429.) The ALJ also noted in discounting medical opinion evidence that "while the record supports significant restrictions on the claimant's social interactions, the evidence shows that the claimant was able to interact appropriately with friends, family, and medical professionals; was independent in his activities of daily living; and maintained employment for many years." (*Id.* at 32.)

In sum, the ALJ discounted Plaintiff's testimony about the intensity, persistence, and limiting effect of his symptoms based on (1) noncompliance with treatment, (2) improvement with treatment, (3) Plaintiff's activities of daily living, and (4) inconsistency with the medical record. (*Id.* at 29-30.) Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting his testimony. (Pl.'s Br. at 16-17.)

### 3.    Treatment Noncompliance

#### a.    Applicable Law

An ALJ may discount a claimant's symptom testimony based on the claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *See SSR 16-3p, 2017 WL 5180304, at \*9-10; Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "If a claimant offers a good reason for non-compliance with treatment, however, then the non-compliance is not a clear and convincing reason to discredit a claimant's testimony." *Jill C. v. Berryhill*, No. 3:17-cv-01892-SI, 2018 WL 6308728, at \*4 (D. Or. Dec. 3, 2018) (citing *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)). "The Ninth Circuit also disfavors faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance." *Id.* (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) and *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

#### b.    Disposition

Viewing the record as a whole, unexplained or inadequately explained treatment noncompliance does not provide a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

Plaintiff's treatment records span a period of nearly six years, from 2015 to 2021 (*see, e.g.*, Tr. 537, 1555), and reveal only brief instances where Plaintiff was off medication. (*See id.* at 647, one month in June 2018; *id.* at 1195, one week in October 2019; *id.* at 1365-66, three

weeks in January 2021; *see also id.* at 595, 607, insurance would not cover certain medications, but Plaintiff remained on other medications.) Further, of the lapses in medication compliance, most are either consistent with Plaintiff's symptom testimony or otherwise explained. For example, Plaintiff was off medication once when his primary care provider ("PCP") moved his practice to another state and once when Plaintiff forgot to pack his medication when traveling for a week to attend a funeral. (*See id.* at 647, PCP moved his practice; *id.* at 1195, forgot to pack his medication.) Plaintiff testified that he was forgetful and needed reminders to take his medication. (*See id.* at 55.) Thus, forgetting to pack his medication is consistent with his symptom testimony regarding his anxiety. *See Garrison*, 759 F.3d at 1018 n.24 ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.") (citations omitted); *Elijah L. S. v. Comm'r Soc. Sec. Admin.*, No. 3:20-cv-01089-AR, 2022 WL 17845933, at *4 (D. Or. Dec. 22, 2022) ("Contrary to the Commissioner's suggestion, there also is evidence that plaintiff's medication noncompliance is a facet of his mental impairments.").

Similarly, in nearly four years of receiving approximately 150 sessions of regularly scheduled, individual counseling from June 2017 to May 2021, plaintiff missed only a few sessions. For example, Plaintiff's therapist was out of town for a week, his anxiety kept him from attending counseling for two weeks, and twice Plaintiff called in advance to cancel. (*See id.* at 1038, 1059, 1389, 1553.) Again, several missed sessions are consistent with Plaintiff's symptom testimony (*see id.* at 83, 379, anxiety prevented Plaintiff from getting out of bed or leaving the house) or otherwise explained, and the other absences cannot reasonably be construed as "relatively frequent cancellations." (*Id.* at 29); *see also Miller v. Berryhill*, 730 F. App'x 526, 526-27 (9th Cir. 2018) (concluding that the ALJ erred in rejecting the plaintiff's symptom

testimony based on a finding "that [the plaintiff] was not always compliant with her treatment

plan" where "the ALJ ignored portions of the treatment records and notes on [the plaintiff's]

compliance with her treatment plan that were not favorable to his conclusion"); *Murray v.*

*Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1133 (D. Or. 2017) (concluding that substantial

evidence did not support the ALJ's finding of treatment noncompliance where "Plaintiff

consistently attended physical therapy, including at least 58 sessions from 2011 to 2014, missing

appointments only when he was out of town or was switching insurance companies").

     While Plaintiff was in outpatient therapy for his prior substance abuse, he briefly stopped

attending the Coping with Depression and Anxiety group therapy because of a conflict with the

scheduling of his outpatient treatment, but subsequently began attending again. (*See* Tr. 876-77,

1051, 1058, 1108.) At the end of 2020, he stopped attending group yoga to make time for

supervising his sons' schooling. (*Id.* at 1429, 1433.) The Court concludes that because Plaintiff

consistently attended individual therapy and generally complied with his prescription medication

regimen, Plaintiff's lapse in attendance at group yoga does not constitute substantial evidence of

unexplained or inadequately explained treatment noncompliance. *See Christopher K. v. Comm'r,*

*Soc. Sec. Admin.*, 649 F. Supp. 3d 1041, 1048 (D. Or. 2023) (concluding that the ALJ erred in

relying on the plaintiff's choice not to participate in group therapy, noting that "despite declining

group therapy, Plaintiff continued to receive individual therapy"). The Court concludes that, to

the extent the ALJ relied on Plaintiff's lack of engagement in treatment, the ALJ erred because,

considering the record as a whole, the record reveals generally good medication compliance,

consistent attendance at individual therapy, and a limited level of engagement in group therapy.

*See Travis H. v. Comm'r Soc. Sec. Admin.*, No. 6:20-cv-00479-YY, 2021 WL 2258403, at *6 (D.

Or. June 3, 2021) (concluding that "of the ALJ's three citations to the record, only one of them

arguably supports a characterization that plaintiff was noncompliant with treatment" and concluding that "the ALJ's finding that plaintiff was noncompliant with treatment is not supported by substantial evidence") (citation omitted); *Harvey v. Colvin*, No. 13-cv-5376-PLA, 2014 WL 3845088, at *10 (C.D. Cal. Aug. 5, 2014) (finding that "one instance of noncompliance does not display a pattern or the type of apathy that would suggest that plaintiff's symptoms are not as serious as alleged") (simplified). Accordingly, treatment noncompliance does not provide a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

### 4.        Improvement with Treatment

#### a.        Applicable Law

An ALJ may discount a claimant's mental health symptom testimony based on improvement with treatment. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1))).

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). In addition, "stability" in a medical context does not necessarily mean that the condition "has been good" but instead may mean that the relevant condition "has not changed." *Christine L. v. Saul*, 450 F. Supp. 3d 1091, 1101 n.4 (D. Or. 2020) (citations omitted).

"That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan*, 246 F.3d at 1205 (citation omitted); *see also Garrison*, 759 F.3d at 1017 (noting that reports of improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace") (citation omitted). The same claimant "may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." *Garrison*, 759 F.3d at 1002 n.4 (citation omitted). "[T]he ALJ must account for the fact that individuals with chronic mental health problems 'commonly have their lives structured to minimize stress and reduce their signs and symptoms.'" *Morgan v. Saul*, No. 5:19-cv-02191 (VEB), 2020 WL 11723490, at *5 (C.D. Cal. Oct. 21, 2020) (citation omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *9 ("An individual may have structured . . . activities to minimize symptoms to a tolerable level by avoiding . . . mental stressors that aggravate . . . symptoms.").

### b.    Disposition

The record as a whole reveals that the ALJ failed to consider cyclical improvements and deteriorations of Plaintiff's symptoms and to contextualize Plaintiff's limited improvements, and substantial evidence does not support a finding that treatment successfully relieved Plaintiff's symptoms.

The ALJ acknowledged that Plaintiff suffered cycles of improvement by noting worsening anxiety, insomnia, and panic attacks when Plaintiff was briefly off his medication. (Tr. 29.) The record supports that Plaintiff's symptoms worsened during those short periods of time. (*Id.* at 647, Plaintiff lashed out, and was snappy and rude when he ran out of gabapentin

after his PCP moved his practice to another state; *id.* at 1195, Plaintiff experienced panic attacks and trouble sleeping when he forgot to pack his medication when traveling to attend a funeral; *id.* at 1366, Plaintiff experienced increased anxiety when he ran out of anxiety medication.) However, contrary to the ALJ's implication that increased anxiety, insomnia, and panic attacks were limited to those brief instances, the record shows that worsening symptoms were not so limited.

Throughout the relevant time period, Plaintiff experienced high levels of stress, worry, and anxiety. (*See id.* at 674, ranking coping skills in moments of stress or conflict as level one on a scale to ten in August 2017; *id.* at 642, anxiety remained about the same and "frequency is still there" in March 2018; *id.* at 663, moderate to high levels of anxiety in May 2018; *id.* at 1076-77, higher anxiety in May 2019, ranking his subjective units of distress as seven out of ten; *id.* at 1116, anxiety scoring nine on a scale out of ten in August 2019; *id.* at 1151, continued excessive and intrusive worry in November 2019; *id.* at 1156-57, anxiety whenever something mildly stressful or unexpected happened in December 2019; *id.* at 1165, high anxiety in January 2020; *id.* at 1439, racing thoughts, easily overwhelmed, struggled to prioritize tasks in January 2020; *id.* at 1458-59, highly anxious and his symptoms negatively impacted his social functioning and ability to accomplish daily tasks in March 2020; *id.* at 1491, a minor stressor interrupted his routine, and he was highly tense and anxious in August 2020; *id.* at 1499, constant critical self-talk and high anxiety in September 2020; *id.* at 1503, consumed with worry in October 2020; *id.* at 1511, intense and frequent worry in October 2020; *id.* at 1249, symptoms "appear to be getting worse" in January 2021; *id.* at 1548, high anxiety and excessive worry most of the day every day in March 2021.)

///

Although there were periods of improvement, treatment did not successfully relieve Plaintiff of poor sleep. (*See id.* at 692, six to seven nightmares on average per week in February 2018; *id.* at 663, trouble falling asleep or staying asleep nearly every day in May 2018; *id.* at 1096, nightmares four nights per week in June 2019; *id.* at 1132, nightmares twice weekly in September 2019; *id.* at 1150, nightly nightmares in November 2019; *id.* at 1461, 1464, difficulty getting to sleep and nightly sleep disturbance in April 2020; *id.* at 1544-46, bad dreams, excessive and intrusive worry, and interrupted sleep most nights in March 2021; *id.* at 1549, could not sleep several nights of the week due to intrusive worry in April 2021.)

Similarly, although the frequency of Plaintiff's panic attacks varied, he continued to suffer regular panic attacks during the relevant time period. (*See id.* at 600-01, three to four panic attacks weekly in June 2017; *id.* at 618, three to five weekly in September 2017; *id.* at 626, worsening panic attacks in November 2017; *id.* at 650, three to five per week in July 2018; *id.* at 1060, daily in March 2019; *id.* at 1199, "stable" at three to four per week in November 2019; *id.* at 1159, twice per week for one to two hours each in December 2019; *id.* at 1310, "stable" at four to five per week in March 2020; *id.* at 1434, two to three times weekly in May 2020; *id.* at 1565, panic attack that lasted several hours in April 2021; *id.* at 1555, one to three per week in May 2021.)

The ALJ also relied on the fact that, at times, Plaintiff denied depressive symptoms (*id.* at 29), yet the record reveals that Plaintiff continued to suffer from depression. (*See id.* at 663, 665, felt down, depressed, or hopeless over half the days in May 2018; *id.* at 1100, felt depressed in July 2019; *id.* at 1124, diagnosis of persistent depressive disorder with anxious distress and persistent major depressive episode, severe, based on his symptoms in September 2019; *id.* at 1180, daily feelings of depression or hopelessness in September 2019; *id.* at 1154, daily

depression in November 2019; *id.* at 1271, feeling down, depressed, or hopeless more than half

the days in January 2020; *id.* at 1462, feeling depressed in April 2020; *id.* at 1481, feeling

depressed most days in July 2020.)

The Commissioner emphasizes that Plaintiff's most recent medical records at the time of

the hearing reflect that Plaintiff was "happy with his current medication regimen and dosages."

(Def.'s Br. at 8, ECF No. 15.) However, that is not substantial evidence that Plaintiff's treatment

successfully relieved symptoms to the extent that Plaintiff could reenter the workforce. *See*

*Wellington*, 878 F.3d at 876 ("[E]vidence of medical treatment *successfully relieving symptoms*

can undermine a claim of disability.") (emphasis added); *see also Janet M. v. Comm'r Soc. Sec.*

*Admin.*, No. 6:21-cv-00725-AR, 2023 WL 3318777, at *4 (D. Or. May 9, 2023) (concluding that

substantial evidence did not support the ALJ's finding that the plaintiff's mental health had

generally improved, despite the plaintiff's report "that medication was generally 'working well'

for her depression and anxiety" given the record as a whole); *Kimberly T. v. Comm'r, Soc. Sec.*

*Admin.*, No. 3:19-cv-01013-HZ, 2021 WL 2554621, at *5 (D. Or. June 22, 2021) (concluding

that the ALJ "erred by rejecting Plaintiff's symptom testimony on the basis that . . . her

prescribed medications 'had resulted in improvement in her functioning'" in the absence of

context, including limited environmental stressors and where "the record demonstrates that the

medication did not completely alleviate her symptoms"). Although the Court agrees that

Plaintiff's symptoms improved when compared to his nine-day hospitalization in 2015 arising

from suicidal ideation and that his symptoms improved when he was on his medication

compared to brief periods without medication, the ALJ failed to contextualize Plaintiff's minimal

improvement in light of limited environmental stressors. *See Sandra G. v. Kijakazi*, No. 2:22-cv-

00958-SI, 2023 WL 4760619, at *6 (D. Or. July 26, 2023) ("[B]ecause Plaintiff's periods of

improvement came only when environmental stressors were severely limited, they provide no support that Plaintiff could function effectively in the workplace."); *Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1281 (D. Or. 2020) (explaining that "[t]he ALJ failed to contextualize Plaintiff's intermittent periods of improvement" to her mental health and concluding that "Plaintiff's brief periods of 'improvement' are not clear and convincing reasons to reject her subjective symptom testimony"); *Morgan*, 2020 WL 11723490, at *5 ("[T]he ALJ was obliged to make clear that he had considered the context in which the clinical findings were documented and the likely impact of imposing work-related demands (including maintaining concentration, persisting at a task, engaging in social interactions, and attending to a sustained schedule) on Plaintiff's symptomatology.").

In sum, improvement with treatment does not provide a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony here. *See Kathryn P. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-cv-00587-HZ, 2023 WL 4234181, at *5 (D. Or. June 26, 2023) ("[T]he ALJ improperly cherry-picked cycles of improvement as a reason to reject Plaintiff's subjective symptom testimony about her mental health. This was not a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony about her mental health limitations."); *Janet M.*, 2023 WL 3318777, at *4 (concluding that substantial evidence did not support the ALJ's finding that "although plaintiff's symptoms waxed and waned, she 'rather consistently reported improvement in her anxiety and depression'"); *Shannon R. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-01699-MK, 2021 WL 5566542, at *5 (D. Or. Nov. 29, 2021) ("An independent review of those treatment notes fails to support the Commissioner's contention that Plaintiff's symptoms improved. When viewed in context, those records reveal that while at times

Plaintiff made limited improvement, her mental health impairments consistently affected her ability to function.").

### 5.    Activities of Daily Living

#### a.    Applicable Law

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination" (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997))); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony" (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

#### b.    Disposition

Substantial evidence does not support the ALJ's conclusion that Plaintiff's daily activities were meaningfully inconsistent with his symptom testimony.

Plaintiff's activities of daily living included walking his dog, performing household chores, preparing simple meals, conducting personal hygiene, going to doctor's appointments, taking medications, watching TV, reading, using the internet, playing games, driving, and

supervising while his sons completed online school programs. (Tr. 27, 30.) As Plaintiff points out (Pl.'s Br. at 17), and the Commissioner agrees (Def.'s Br. at 12-13), the latter activity was highly stressful for Plaintiff, although he was able to do it with the help of counseling. (*See* Tr. 1041, 1047, 1049, 1165, 1444, 1447, 1507, 1510-11, 1518-19, 1523, 1544, 1564, 1566, discussing his anxiety about his sons' education during at least fifteen counseling sessions); *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1036 (D. Or. 2022) ("Plaintiff reports struggling to perform these activities, and the ALJ's decision ignores this context."); *Miranda W.*, 509 F. Supp. 3d at 1283 (concluding that the plaintiff's periodic attendance at community college and work as a part-time pet sitter "reveals no inconsistencies" with her testimony regarding the severity of her mental health conditions but "[i]n fact, it shows Plaintiff's attempts to lead a normal life in the face of her limitations, and her inability to do so because of those limitations").

The Court concludes that Plaintiff's limited daily activities do not provide a clear and convincing reason supported by substantial evidence for discounting his testimony. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be utterly incapacitated in order to be disabled." (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001))); *Malkin v. Saul*, 818 F. App'x 738, 740 (9th Cir. 2020) (concluding that the plaintiff's daily activities of caring for her children with the help of family members, grocery shopping with family, preparing quick meals, and avoiding socializing "did not contradict her symptom testimony [regarding the severity of her anxiety and panic attacks] and thus did not provide a clear and convincing reason for discrediting it"); *see also Nicole N.-M.*, 649 F. Supp.

3d at 1035-36 ("[T]he majority of the activities in which Plaintiff engaged—performing adequate self-care, preparing simple meals, driving a car, paying her bills, handling her finances, performing household chores, and going grocery-shopping—are limited basic daily activities that are legally insufficient to support the ALJ's conclusion." (citing *Webb*, 433 F.3d at 688)); *Kimberly T.*, 2021 WL 2554621, at *4 ("The ALJ did not find, however, that Plaintiff's reported activities indicated transferrable work skills. The ALJ also failed to specify how Plaintiff's reported activities contradict her symptom testimony."); *Jonna S. v. Comm'r, Soc. Sec. Admin.*, No. 3:18-cv-02236-HZ, 2020 WL 5847090, at *4 (D. Or. Sept. 29, 2020) ("The ALJ erred in citing Plaintiff's ability to walk two to five miles, care for her son, and do various activities around the house because none of these activities are inconsistent with Plaintiff's alleged limitations" related to panic attacks, anxiety, and depression); *Stewart*, 16 F. Supp. 3d at 1215 (holding that although the plaintiff cared for her daughter and performed household chores, "[t]he ALJ did not . . . explain how these relatively limited daily activities, which Plaintiff performed in her own home, are evidence that she would be able to engage in substantial gainful activity").

### 6. Inconsistency with Medical Evidence

#### a. Applicable Law

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); s*ee also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical

impairments was not supported by the objective medical evidence, the ALJ cannot properly rely

on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

### b.    Disposition

The ALJ noted that mental status examinations showed Plaintiff to be "alert and oriented,

appropriately groomed and dressed, and pleasant and cooperative, with normal mood and affect,

appropriate behavior, good eye contact, and fully understandable speech . . . linear and goal-

directed thought processes, normal attention and concentration, appropriate thought content,

normal memory, good judgment and insight, and average cognitive functioning . . . [with] no

evidence of hallucinations or delusions, and the claimant denied homicidal and suicidal

ideation[.]" (Tr. 30.) Most of those observations are not inconsistent with Plaintiff's symptom

testimony and thus are of little to no relevance. *See Ghanim*, 763 F.3d at 1164 (rejecting the

ALJ's reliance on "good eye contact, organized and logical thought content, and focused

attention" and "cognitive functioning" because they "do not contradict [the plaintiff's] reported

symptoms of depression and social anxiety"); *see also Janet M.*, 2023 WL 3318777, at *4

(rejecting reliance on mental status exams showing the plaintiff was "pleasant and cooperative,"

"well-groomed, and 'engaged and active in the conversation'" as a reason to discount the

plaintiff's symptom testimony about her anxiety, depression, panic, and posttraumatic stress

disorder); *Nicole N.-M.*, 649 F. Supp. 3d at 1037 ("The ALJ fails to explain why the findings

related to Plaintiff's demeanor and cognition undermine Plaintiff's [mental health] symptoms.");

*Jonna S.*, 2020 WL 5847090, at *6 ("Plaintiff's normal mental status exams at these

appointments do not conflict with Plaintiff's impairments of agoraphobia, anxiety, and panic.

Courts have repeatedly held that displaying normal cognitive functioning or a calm appearance

does not undermine a claimant's testimony alleging symptoms such as anxiety and fatigue, and

frequent panic attacks.") (simplified); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1219 (D. Or. 2015)

(rejecting reliance on observations that the plaintiff was "alert" with normal affect and speech as a reason to discount the plaintiff's mental health symptom testimony).

    In any event, having found that the ALJ's other reasons to discount Plaintiff's testimony were legally insufficient, inconsistent objective medical evidence cannot be the only reason for discounting Plaintiff's symptom testimony. *See Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *12 (D. Or. Oct. 23, 2023) ("[T]he lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony. Accordingly, the Court concludes that the ALJ committed harmful error." (citing *McClaren*, 812 F. App'x at 501, *Valdez*, 746 F. App'x at 677, and *Taylor*, 720 F. App'x at 907)); *Ortiz v. Berryhill*, No. 2:17-cv-06243-JDE, 2018 WL 3655411, at *4 (C.D. Cal. July 31, 2018) (reversing and remanding where "[t]he only articulated reason for finding Plaintiff only partially credible was 'the medical records do not support the alleged severity of his symptoms'").[3]

## II.    LAY WITNESS TESTIMONY

    Plaintiff argues that the ALJ erred by improperly rejecting competent lay testimony from Plaintiff's wife. (Pl.'s Br. at 18.) The Commissioner argues that "[b]ecause the ALJ properly considered Plaintiff's subjective allegations, which were similar to his wife's statements, and the ALJ properly discounted Plaintiff's subjective testimony, the ALJ was not required to articulate how he considered Plaintiff's wife's statements." (Def.'s Br. at 22-23, citing *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).)

    "Under the 2017 regulations, the ALJ is not 'required to articulate how [they] considered evidence from nonmedical sources' using the same criteria required for the evaluation of medical

---

[3] Because the Court concludes that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's mental health symptom testimony, the Court does not address Plaintiff's argument that the ALJ did not provide clear and convincing reasons for rejecting his physical symptom testimony. (*See* Pl.'s Br. at 17.)

sources." *Christopher K.*, 649 F. Supp. 3d at 1049 (quoting 20 C.F.R. § 404.1520c(d)). "Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements." *Id.* (citing *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021)); *see also Janet M.*, 2023 WL 3318777, at *6 (explaining the same).

Here, the ALJ noted that Plaintiff's wife's testimony corroborated Plaintiff's allegations but provided no further analysis of her testimony. (Tr. 29.) The Court concludes that, for the same reasons the ALJ erred in rejecting Plaintiff's symptom testimony, the ALJ rejected Plaintiff's wife's testimony in error. *See Janet M.*, 2023 WL 3318777, at *6 (noting that, "as explained above, the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony" and "[t]herefore, the ALJ erred in failing to consider the lay witness statements"); *Christopher K.*, 649 F. Supp. 3d at 1050 (explaining that the lay witnesses' "statements are substantially similar to Plaintiff's testimony[,]" "[t]he Court has already concluded the ALJ erred when she partially rejected Plaintiff's testimony because the ALJ failed to provide support for her opinion based on substantial evidence in the record[,]" and "[t]he Court also concludes on the same basis that the ALJ erred when she rejected" the lay witnesses' testimony).

## III.    MEDICAL OPINION TESTIMONY

### A.    Applicable Law

As the parties agree (*see* Pl.'s Br. at 5; Def.'s Br. at 3-4), the new regulations apply here because Plaintiff filed his applications after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security claim] because she filed her claim on or after March 27, 2017").

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* at

791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [the ALJ] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [the ALJ] considered the supportability and consistency factors' in reaching [the ALJ's] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion . . . [such as the medical source's] understanding of . . . disability program[] policies and evidentiary requirements . . . [or] familiarity with the other evidence in the claim[.]" 20 C.F.R. §§ 416.920c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [the ALJ] considered the . . . factors in paragraphs (c)(3) through (c)(5)[,]" *id.* § 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and

facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32 F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through (c)(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

**B.    Analysis**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the medical opinions of three of Plaintiff's providers: Guinee, Ankeny, and Jefferis. (Pl.'s Br. at 6-13.)

The ALJ addressed the three opinions (Tr. 32-33), after explaining why the ALJ found persuasive, in part, two state agency medical opinions and the opinion of a consultative examiner. (*Id.* at 32.) The consultative examiner found no limitation understanding, remembering, and carrying out simple instructions; mild limitation understanding, remembering, and carrying out complex instructions and interacting with supervisors, co-workers, and the public with difficulty initially interacting with others; and moderate limitation making simple work-related decisions and responding to usual work situations and changes in work settings. (*Id.*, citation omitted.) The state agency medical consultants found that Plaintiff had no limitation

in understanding, remembering, or applying information and no limitation in adapting or managing himself; moderate limitation in concentrating, persisting, or maintaining pace; and marked limitation in interacting with others such that he should have no contact with the public. (*Id.*, citing Tr. 109, 112-13, 127-28, 140, 144-45, 156, 160-61.) The ALJ rejected the finding of marked limitation in interacting with others because Plaintiff was able to interact appropriately with friends, family, and medical professionals, was independent in his activities of daily living, and maintained employment for many years. (*Id.*, citations omitted.)

### 1.    Guinee's Opinion

The Court concludes that substantial evidence does not support the ALJ's evaluation of Guinee's opinion.

Guinee, LMFT, provided a written statement in August 2018. (*Id.* at 871-72.) Guinee had provided approximately forty sessions of individual, cognitive behavioral therapy to Plaintiff since June 2017. (*Id.* at 871.) Plaintiff also attended group mental health counseling and yoga through Guinee's organization. (*Id.*) Guinee described Plaintiff's ongoing moderate to high levels of anxiety, that Plaintiff felt unable to motivate himself to take any action out of fear that something bad would happen, and that Plaintiff's anxiety interfered with calm and rational thinking. (*Id.*) Guinee opined that it would be difficult for Plaintiff to understand, remember, or carry out instructions or to make judgments on work-related decisions, and she assessed marked impairments in his ability to interact appropriately with supervisors, co-workers, or the public or to respond appropriately to typical work situations. (*Id.* at 872.) She explained, "[i]t is my view that any small problems that he experienced at work would quickly escalate to the point that he would feel too much anxiety or panic to be present at the job without excessive absences." (*Id.*)

The ALJ considered Guinee's opinion "unpersuasive." (*Id.* at 33.) The ALJ explained that Guinee's opinion is unsupported because the majority of her rationale is based on Plaintiff's

subjective reports and not on objective observations and because her opinion is unsupported by her treatment notes. (*Id.*) The ALJ also found Guinee's opinion inconsistent with other medical sources documenting good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and concentration, and normal thought content. (*Id.*, citing generally Tr. 533-658, 717-808, 1027, 1244-55, 1263-1368.)

Plaintiff argues that substantial evidence does not support those findings because Guinee based her opinion on objective observations, her treatment notes revealed frequent panic attacks, sleep issues, cyclical depressive symptoms, and "waxing and waning" anxiety despite treatment, and Guinee's opinion is consistent with chart notes from other providers. (Pl.'s Br. at 11-13.) The Court agrees.

First, the Ninth Circuit has explained, "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields" because "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* (citation omitted). Further, "a clinical interview and a mental status evaluation . . . are objective measures and cannot be discounted as a 'self-report.'" *Id.*

Here, Guinee's opinion letter described *both* Plaintiff's reported symptoms and objective observations. Guinee described Plaintiff's reported difficulty communicating and articulating his thoughts, and Guinee noted that she had observed that Plaintiff "frequently displayed very slow speech in our sessions together." (Tr. 872.) Plaintiff also "has shown physical symptoms of anxiety, including excessive sweating and rapid, shallow breathing[.]" (*Id.*) Those objective

observations are supported by Guinee's treatment notes, including mental status evaluations. (*See, e.g.*, *id.* at 665-66, mental status exam documenting observations of slowed motor and speech and depressed, anxious, and apprehensive mood.) Reliance on Plaintiff's subjective reports therefore is not a valid reason for discounting Guinee's opinion. *See Pilgreen v. Berryhill*, 757 F. App'x 618, 619 (9th Cir. 2019) ("[The consulting psychologist] also performed tests and made her own observations. Her assessment was, therefore, a typical psychological evaluation. That it relied in part on [the plaintiff's] self-reports is not a valid reason for rejecting it." (citing *Buck*, 869 F.3d at 1049)); *Jenny J. B. v. Acting Comm'r of Soc. Sec.*, No. 3:22-cv-5450-TLF, 2023 WL 2386925, at *4 (W.D. Wash. Mar. 7, 2023) ("The medical opinions were both based on clinical interviews and mental status evaluations which are 'objective measures and cannot be discounted as a self-report.'") (citation omitted); *Ladonia R. R. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-01179-JR, 2023 WL 4760602, at *6 (D. Or. July 26, 2023) (concluding that the ALJ erred where the medical opinion about the plaintiff's depression, anxiety, and social isolation was based "on a number of objective measures which the ALJ simply ignored"); *Veronica M. G. v. Comm'r, Soc. Sec. Admin.*, No. 1:19-cv-01303-CL, 2023 WL 2189552, at *9 (D. Or. Jan. 25, 2023) (concluding that the ALJ improperly rejected the plaintiff's examining psychologist's opinion "because it relied on Plaintiff's subjective complaints"), *findings and recommendation adopted*, 2023 WL 2187509 (D. Or. Feb. 23, 2023); *Erica S. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01026-IM, 2020 WL 1131483, at *6 (D. Or. Mar. 9, 2020) ("Although [the consulting psychologist's] findings appear to be based primarily on Plaintiff's reporting, this reporting was obtained through clinical interview, and [the psychologist] also conducted a mental status evaluation. As such, . . . this was not a proper reason to disregard [the psychologist's] report.") (citation omitted).

PAGE 28 – OPINION AND ORDER

Second, Guinee's treatment notes support her opinion. An ALJ may not "selectively" rely on some of Guinee's observations while ignoring the overall thrust of her notes supporting her opinion. *Holohan*, 246 F.3d at 1207; *Garrison*, 759 F.3d at 1017 n.23 (noting that "[t]he ALJ was not permitted to 'cherry pick' from . . . mixed results") (citation omitted). While the treatment notes confirm that Guinee generally documented good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and concentration, and normal thought content, the record also documented ongoing anxiety, panic, depression, and trouble sleeping. (*See* Tr. 674, documenting Plaintiff ranking his coping skills in moments of stress or conflict as level one on a scale to ten in August 2017; *id.* at 692, six to seven nightmares on average per week in February 2018; *id.* at 663, moderate to high levels of anxiety, trouble falling asleep or staying asleep nearly every day, little energy, felt bad about himself, and felt on edge in May 2018; *see also id.* at 1060, daily panic attacks and anxiety in March 2019; *id.* at 1076, higher anxiety in May 2019, ranking subjective units of distress as seven out of ten; *id.* at 1096, nightmares four nights per week in June 2019; *id.* at 1116, anxiety scoring nine on a scale out of ten in August 2019; *id.* at 1124, in September 2019, Plaintiff reported that therapy has been helping while he was with his counselor, but the effect did not last when he left the office; *id.* at 1132, nightmares twice weekly in September 2019.) As an example of Plaintiff's difficulty carrying out simple tasks, Guinee and Plaintiff spent at least five therapy sessions talking about his anxiety about calling the dentist to schedule an appointment starting in April 2019 until he made the phone call in July. (*Id.* at 1068, 1071, 1072, 1074, 1099.)

Thus, substantial evidence does not support the ALJ's conclusion that Guinee's opinion was unsupported. *See Jonah H. v. Kijakazi*, No. 1:20-cv-03149-JAG, 2022 WL 17222698, at *4 (E.D. Wash. Sept. 13, 2022) (rejecting the ALJ's conclusion that the record showed "benign

mental status findings" because the ALJ did not discuss all relevant evidence); *Jason R. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-01981-MK, 2022 WL 981329, at *8-9 (D. Or. Jan. 21, 2022) (concluding that the ALJ improperly rejected a medical opinion regarding the plaintiff's depression and anxiety based on subjective reports and the record as a whole), *findings and recommendation adopted*, 2022 WL 980880 (D. Or. Mar. 31, 2022).

Finally, the ALJ found that "observations including good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and concentration, and normal thought content" are inconsistent with Guinee's opinion that Plaintiff would have difficulty understanding and carrying out instructions, making work-related decisions, and interacting with others and that Plaintiff would be absent excessively due to his impairments. (Tr. 33.) However, the ALJ did not explain how those observations are inconsistent with Guinee's opinion. *See Ghanim*, 763 F.3d at 1164 (rejecting the ALJ's reliance on "good eye contact, organized and logical thought content, and focused attention" and "cognitive functioning" because they "do not contradict [the plaintiff's] reported symptoms of depression and social anxiety"); *S.M. v. Saul*, No. 19-cv-02509-LB, 2020 WL 5366534, at *8 (N.D. Cal. Sept. 8, 2020) (rejecting the ALJ's inconsistency finding when "the ALJ did not explain why the plaintiff's function reports were inconsistent with [the medical] opinion").[4]

In summary, the ALJ failed to provide legally sufficient reasons for rejecting Guinee's medical opinion.

///

---

[4] The Court rejects the Commissioner's argument that Guinee's, Ankeny's, and Jefferis' reports are not completely consistent with each other and are inconsistent with the state agency medical consultants' opinions because the ALJ did not rely on those reasons to reject any of the three medical opinions. (*See* Def.'s Br. at 13); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (explaining that a reviewing court "may not affirm the ALJ on a ground upon which [the ALJ] did not rely") (citation omitted).

2.      **Ankeny's Opinion**

Ankeny, NP, provided a written statement on Plaintiff's functional abilities in February

2020. (Tr. 1216-22.) Ankeny had treated Plaintiff every two to three months since 2016 for

psychiatric medication management. (*Id.* at 1216.) She opined that Plaintiff's significant anxiety

and panic prevented him from keeping a steady job with regular hours and that he would miss

more than two days of work per month due to panic attacks. (*Id.* at 1217.) She assessed mild

limitation in his ability to carry out simple instructions; moderate limitation in Plaintiff's ability

to understand and remember simple instructions; and marked limitation in the ability to make

judgments on simple, work-related decisions, understand and remember complex instructions,

carry out complex instructions, and make judgments on complex, work-related decisions. (*Id.* at

1219.) Ankeny also assessed moderate limitation in Plaintiff's ability to interact appropriately

with coworkers and respond appropriately to usual work situations and to changes in routine

work settings and marked limitation in Plaintiff's ability to interact appropriately with the public

and with supervisors. (*Id.*)

The ALJ considered Ankeny's opinion "unpersuasive" because it was inconsistent with

and "unsupported by Ankeny's treatment notes," which showed Plaintiff to be "improving and

stable with treatment, and included observations of good grooming and hygiene, normal speech,

appropriate eye contact, appropriate mood and affect, good attention span, and unremarkable

thought process and content." (*Id.* at 33.) The ALJ also found Ankeny's opinion inconsistent

with other medical sources documenting good grooming and hygiene, appropriate mood and

affect, intact judgment and insight, normal memory and concentration, and normal thought

content. (*Id.*, citing generally Tr. 533-658, 717-808, 1027, 1244-55, 1263-1368.)

First, the record does not support a finding that Ankeny's opinion was unsupported by

her own medical findings. (*See id.* at 601, Plaintiff experienced three to four panic attacks

weekly in June 2017; *id.* at 618, three to five panic attacks weekly with fluctuating anxiety in September 2017; *id.* at 626, worsening panic attacks in November 2017; *id.* at 642, anxiety is about the same and "frequency is still there" in March 2018; *id.* at 651, panic has been about the same—three to five times per week—but Plaintiff's threshold for anxiety is still low in July 2018; *id.* at 1198-99, "stable" at three to four panic attacks per week in November 2019; *see also id.* at 1310, "stable" at four to five panic attacks per week in March 2020.) Ankeny further documented observations of Plaintiff being low energy, sluggish, half-asleep, and diaphoretic. (*Id.* at 584, 639, 644, 648, 653.) Thus, the ALJ erred by rejecting Ankeny's opinion testimony as unsupported by her own medical findings. *See Reynoldson*, 649 F. Supp. 3d at 1121 ("The ALJ noted several normal findings among [the doctor's] records, but failed to acknowledge her abnormal findings.").

Second, consistent with the Court's conclusion that the ALJ erred in rejecting Plaintiff's symptom testimony based on improvement with treatment, the Court concludes that substantial evidence does not support the ALJ's finding that Ankeny's treatment notes demonstrated that Plaintiff's symptoms meaningfully improved with treatment. Accordingly, the ALJ erred by rejecting Ankeny's opinion on that ground. *See Ryan*, 528 F.3d at 1200-01 ("Nor are the references in [a doctor's] notes that [the plaintiff's] anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions[.]") (citation omitted); *Reynoldson v. Comm'r of Soc. Sec.*, 649 F. Supp. 3d 1114, 1121 (W.D. Wash. 2023) (concluding that the ALJ's reason for discounting medical opinion evidence "all fail for largely the same reasons the ALJ's rejection of [the plaintiff's] testimony fails[,]" including that substantial evidence did not support a finding of significant improvement).

///

Finally, as described in relation to Guinee's opinion, the ALJ does not explain how observations of good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and concentration, and normal thought content while at medical appointments with a known provider are inconsistent with Ankeny's opinion. The ALJ therefore failed to provide legally sufficient reasons for rejecting Ankeny's medical opinion.

### 3.    Jefferis' Opinion

Jefferis, LMFT, provided a written opinion in March 2020. (Tr. 1239-43.) After Guinee stopped working at the agency in October 2019, Jefferis took over Plaintiff's weekly mental health therapy. (*Id.* at 1132, 1239.) Jefferis described Plaintiff's excessive anxiety and worry, restlessness, feeling on edge, fatigue, difficulty concentrating, mind going blank, irritability, muscle tension, and sleep disturbance. (*Id.* at 1242.) She noted that Plaintiff experienced anxiety attacks and perseverated on everything that could go wrong whenever he considered looking for work as well as when he engaged in routine daily tasks such as showering, making phone calls, or running an errand outside of his home. (*Id.*) Jefferis reported that Plaintiff would likely freeze or have a panic attack if expected to work with an unhappy member of the public, feel highly anxious if working around people but would interact respectfully with coworkers, and would not respond well to criticism from a supervisor. (*Id.*) She described that Plaintiff's mind went blank when he became anxious about making a mistake on a complex task, and he lost his ability to make decisions. (*Id.*)

The ALJ considered Jefferis' opinion "unpersuasive" because it was unsupported by any objective observations and based entirely on Plaintiff's subjective reports. (*Id.* at 33.) The ALJ also concluded that the opinion is inconsistent with observations including good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and

concentration, and normal thought content. (*Id.*, citing generally Tr. 533-658, 717-808, 1027, 1244-55, 1263-1368.)

Again, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. In addition, as with Guinee's opinion, Jefferis derived her opinion from both subjective reports and objective observations, such as mental status exams. (*See id.* at 1464, soft and rough voice accompanying reports of feeling very tired and not sleeping; *id.* at 1499, dark circles under Plaintiff's eyes, disheveled hair and clothing; *id.* at 1557, mental status exam documenting lethargy and anxious mood.) Further, Jefferis' chart notes support her opinion. (*See id.* at 1149, nightly nightmares; *id.* at 1151, continued excessive and intrusive worry; *id.* at 1154, daily anxiety and depression; *id.* at 1156, anxiety whenever something mildly stressful or unexpected happens; *id.* at 1159, anxiety attacks twice per week for one to two hours each; *id.* at 1162, when he feels he cannot make everyone in a situation happy, he becomes flooded with mental fogginess and cannot take any clear action; *id.* at 1165, high anxiety; *id.* at 1434, panic attacks two to three times weekly; *id.* at 1439, racing thoughts, easily overwhelmed, struggles to prioritize tasks; *id.* at 1458, highly anxious and his symptoms negatively impact his social functioning and his ability to accomplish daily tasks such as making phone calls; *id.* at 1462, difficulty getting to sleep; *id.* at 1464, nightly sleep disturbance and difficulty maintaining daily hygiene; *id.* at 1467, continued struggle with daily hygiene; *id.* at 1475, daily intrusive worry; *id.* at 1481, feeling depressed most days; *id.* at 1483, more intense but less lengthy bouts of anxiety; *id.* at 1491, minor stressor interrupted his routine, and he has been highly tense and anxious since; *id.* at 1499, constant critical self-talk and high anxiety; *id.* at 1503, consumed with worry; *id.* at 1511, intense and frequent worry; *id.* at 1528, high anxiety; *id.* at 1544, increased anxiety, excessive and intrusive worry most nights

and interrupted sleep; *id.* at 1545, bad dreams and interrupted sleep most nights; *id.* at 1548, high anxiety and excessive worry most of the day every day; *id.* at 1549, could not sleep several nights of the week; *id.* at 1552, struggles with daily tasks such as shopping and making phone calls; *id.* at 1565, panic attack that lasted several hours.)

Finally, as described in relation to Guinee's opinion, the ALJ does not explain how observations of good grooming and hygiene, appropriate mood and affect, intact judgment and insight, normal memory and concentration, and normal thought content are inconsistent with Jefferis' opinion. For all of these reasons, the ALJ failed to provide legally sufficient reasons for rejecting Jefferis' medical opinion.

### C.    Conclusion

In summary, the ALJ committed harmful legal error by (1) failing to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony, (2) improperly discounting Plaintiff's wife's testimony, and (3) failing to provide legally sufficient reasons for rejecting Guinee's, Ankeny's, and Jefferis' opinions. On this record, the Court cannot conclude that the ALJ's errors were harmless. *See Holly B. v. Comm'r of Soc. Sec. Admin.*, No. 6:20-cv-00355-JR, 2021 WL 1612298, at *7 (D. Or. Apr. 26, 2021) ("As discussed herein, the ALJ committed harmful legal error by failing to properly weigh plaintiff's and [lay] testimony concerning plaintiff's mental impairments, as well as the [two] medical opinions[.]"); *Contreras v. Saul*, 477 F. Supp. 3d 1107, 1133 (S.D. Cal. 2020) (concluding that the ALJ committed harmful error by rejecting the plaintiff's symptom testimony without clear and convincing reasons supported by substantial evidence and by rejecting the lay testimony that substantially corroborated the plaintiff's testimony); *Mike F. v. Berryhill*, No. 3:17-cv-01667-YY, 2018 WL 4896714, at *5 (D. Or. Oct. 9, 2018) ("Although the ALJ's errors in the credibility analysis may be harmless as long as the ALJ provided at least one clear and convincing reason for discounting

the claimant's symptom testimony, here, the ALJ failed to provide any such reasons. Accordingly, the ALJ's errors were not harmless." (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004))).

## IV.   REMEDY

Plaintiff asks the Court to remand for an immediate award of benefits. (Pl.'s Br. at 20.) The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

### A.   Applicable Law

"Generally when a court . . . reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

///

///

B.      **Analysis**

First, the Court has concluded that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, his wife's testimony, and medical opinion evidence.

Second, the record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity and effects of his impairments. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1104 (9th Cir. 2014) (explaining that to determine whether the record is fully developed the court looks to whether there are "significant factual conflicts in the record"). Further, a VE testified that missing two or more days per month of work or occasional response to criticism or feedback from a supervisor by making more mistakes would lead to termination. (*See* Tr. 63-64, 95-96.) If Plaintiff's symptom testimony and the three medical opinions are credited as true, Plaintiff would miss two or more days of work per month and occasionally respond to criticism by making more mistakes. (*Id.* at 85, 872, 1217, 1242); *see Garrison*, 759 F.3d at 1022, 1022 n.28 (explaining that "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true").

Third, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. Therefore, the Court remands this case for the immediate calculation and payment of benefits. *See Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ

for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment"); *Koch v. Astrue*, No. 3:08-cv-00609-PK, 2009 WL 1743680, at *19 (D. Or. June 15, 2009) ("[T]he Ninth Circuit has indicated that a court will not remand solely to allow an ALJ to make specific findings regarding a claimant's improperly discredited testimony." (citing, *inter alia*, *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998))).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for a finding of disability and immediate calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 21st day of December, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge